# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KENDRICK LEWIS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 08-5106** |
| **N. BURL CAIN, WARDEN** | **SECTION "R"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as time-barred.

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.      FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Kendrick Lewis, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On April 17, 1998, Lewis and a co-defendant, John Collins, were indicted by a grand jury in Orleans Parish for distribution of heroin.[3] The Louisiana Fourth Circuit Court of Appeal summarized the facts of the case in relevant part as follows:

> On July 10, 1998, members of the New Orleans Police Department were conducting a "buy-bust" operation in the Second District. Detective Adam Henry was acting in an undercover capacity with D.E.A. Agent Catherine Butler. The officers targeted the 1200 block of Eagle Street, an area about which hotline complaints of narcotics sales had been received. Detective Henry drove down Plum Street, turning onto Eagle, at which time he was flagged down by John Collins. Detective Henry, who was driving the car in which Agent Butler was the passenger, entered into a discussion with Collins about buying cocaine. Detective Henry then told Collins he would rather purchase heroin. Collins indicated that he could provide heroin, and Detective Henry asked for "two papers" which was the street term for two twenty-five dollar hits of heroin. At that time, the appellant, Kedrick Lewis, was standing at the rear passenger side of the undercover officers' vehicle. He walked around the officers' car, talking with Collins, asking if he "got this." Collins and Lewis then walked across the street together. Collins waited by the steps of a house while Lewis went inside. When Lewis came back out, the two men walked back across the street. As they were crossing, Lewis apparently handed a plastic bag to Collins. Collins gave the bag to Detective Henry in exchange for five ten-dollar bills. These bills had previously been photocopied and date and time stamped.

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 2 of 4, Indictment, 4/17/98. Lewis was indicted under the name "Kedrick Lewis," which is used by the state courts in several rulings.

The vehicle in which Detective Henry and Agent Butler were driving had audio and video recording equipment. Also, the vehicle had a Kel set by which the undercover officers could transmit audio to other officers involved in the operation, including Detective Harrison who was acting as a spotter. Detective Harrison, who was positioned approximately one-half block to the rear of Henry, was able to observe Collins approach the undercover officers' vehicle. Detective Harrison testified at trial that he saw Collins and Lewis walking across the street, Lewis entering the house, then exiting, and handing an object to Collins as they crossed the street. After the transaction between Collins and Detective Henry was finished, Detective Harrison saw Collins and Lewis walk to a store at the corner of Oak and Eagle Streets. Detective Harrison relayed a description of the men to the support units.

Sergeant Pat Brown and Detective Paul Toye, acting as a back-up unit, responded to the report of the location and description of the suspects who had sold narcotics. They entered the grocery store and observed the defendant and John Collins. They informed the two suspects that they were under investigation, gave them their Miranda rights, and removed them from the store. Polaroid photos of the two suspects were made. Those photos were then taken to Detectives Henry and Harrison who independently identified them as depicting the men involved in the drug sale. The two defendants were arrested. In a search incidental to arrest, the five ten-dollar bills which had been photocopied prior to the commencement of the buy-bust operation were found on Kedrick Lewis.

In addition to the testimony of Detectives Henry, Harrison, and Toye and Sergeant Brown, the videotape made by the equipment in Detective Henry's vehicle was played for the jury. According to Detective Henry, Lewis was shown on the videotape twice speaking with Collins, as well as handing an object to Collins. Joseph Tafaro, a criminalist with the New Orleans Police Department, testified at trial that he analyzed a white powder found in two foils inside a plastic envelope and that the powder tested positive for heroin.

State v. Lewis, 800 So.2d 1077, 1078-79 (La. App. 4th Cir. 2001); State Record Volume 4 of 4, Louisiana Fourth Circuit Opinion, 2000-KA-1897, pp. 2-4, October 31, 2001.

On March 31, 1999, Lewis was tried before a jury and Collins was tried by the judge in the same proceeding.[4] The court found Collins guilty of possession of heroin and the jury was unable to return a verdict as to Lewis. A mistrial was declared as to Lewis. The court proceeded to sentence Collins to serve four years with the Department of Corrections, with a recommendation that he attend the Blue Walters Drug Program.[5]

Lewis again was tried before jury on November 30, 1999, and was found guilty as charged of distribution of heroin.[6] The state trial court sentenced him on December 7, 1999, to serve life imprisonment without probation or suspension of sentence.[7] The court also denied Lewis's motion to reconsider the sentence.[8]

On appeal to the Louisiana Fourth Circuit, Lewis raised two grounds for relief:[9] (1) The trial court erred in failing to grant a mistrial during the State's closing arguments, which referenced impermissible "other crimes" evidence. (2) Counsel gave ineffective

---

[4]St. Rec. Vol. 1 of 4, Trial Minutes, 3/31/99 (Lewis); Trial Minutes, 3/31/99 (Collins); St. Rec. Vol. 3 of 4, Trial Transcript, p. 3, 3/31/99.

[5]St. Rec. Vol. 1 of 4, Trial Minutes, 3/31/99 (Collins).

[6]St. Rec. Vol. 1 of 4, Trial Minutes, 11/30/99; St. Rec. Vol. 2 of 4, Jury Verdict, 11/30/99; St. Rec. Vol. 3 of 4, Trial Transcript, 11/30/99.

[7]St. Rec. Vol. 1 of 4, Sentencing Minutes, 12/7/99; St. Rec. Vol. 3 of 4, Sentencing Transcript, 12/7/99.

[8]Id.; St. Rec. Vol. 2 of 4, Motion to Reconsider Sentence, 12/7/99.

[9]St. Rec. Vol. 2 of 4, Appeal Brief, 2000-KA-1897, undated; State v. Lewis, 800 So.2d at 1077; St. Rec. Vol. 4 of 4, 4th Cir. Opinion, 2000-KA-1897, 10/31/01.

assistance for failure to impeach Detective Henry with his conflicting testimony from the first trial. The court affirmed the conviction, finding no merit to Lewis's claims.[10]

Lewis's conviction became final 30 days after the ruling of the Louisiana Fourth Circuit, on November 30, 2001, because he did not seek rehearing or file for timely review in the Louisiana Supreme Court.[11] Butler v. Cain, 533 F.3d 314 (5th Cir. 2008) (citing Roberts v. Cockrell, 319 F.3d 690, 694-95 (5th Cir. 2003)) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process)).

Thereafter, on December 3, 2001, Lewis submitted an untimely[12] writ application, which was filed by the Louisiana Supreme Court on January 8, 2002, seeking review of

---

[10]State v. Lewis, 800 So.2d at 1077; St. Rec. Vol. 4 of 4, 4th Cir. Opinion, 2000-KA-1897, 10/31/01; St. Rec. Vol. 3 of 4, 4th Cir. Clerk's Certificate, 10/31/01. The court also instructed the trial court to correct its minutes and commitment order to clarify that the sentence was imposed without a restriction on parole eligibility.

[11]Pursuant to La. S. Ct. R. X§5, petitioner had 30 days from the issuance of the state appellate court's opinion to mail or file a timely writ application in the Louisiana Supreme Court, which he did not do. See also, La. Code Crim. P. art. 922.

[12]Id., see La. S. Ct. R. X§5. Lewis had 30 days from issuance of the appellate court's decision, or until November 30, 2001, to file a writ application in, or mail one to, the Louisiana Supreme Court. Lewis's pro se writ application was signed and postmarked December 3, 2001, and filed by the court on January 8, 2002. See St. Rec. Vol. 3 of 4, La. S. Ct. Letter, 2002-KO-49, 1/14/02 (indicating file date of 1/8/02 and postmark date of 12/3/01); St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 02-KO-0049, 1/8/02; Causey v. Cain, 450 F.3d 601 (5th Cir. 2006) (mailbox rule applies to state filings for timeliness purposes on habeas review). For purposes of applying the mailbox rule in this case, Lewis's signature date is presumed to be the earliest date on which he could have presented the pleading to prison officials for mailing to the state trial court.

5

the same two claims raised on direct appeal.[13] The Louisiana Supreme Court denied the application without reasons on January 31, 2003.[14]

Almost eight months later, on September 16, 2003, Lewis submitted an application for post-conviction relief to the state trial court, which was filed on September 22, 2003, raising seven grounds for relief:[15] (1) The evidence was insufficient to support the conviction for distribution of heroin. (2) The life sentence was excessive and amounted to cruel and unusual punishment. (3) The evidence was insufficient to support a finding of guilt. (4) The true bill failed to charge the offense and was jurisdictionally defective. (5) The indictment was received under La. Code Crim. P. art. 413(C) and was unconstitutional under State v. Dilosa, 848 So. 2d 546 (La. 2003).[16] (6) Counsel gave ineffective assistance by not allowing Lewis to testify on his own behalf. (7) Counsel gave ineffective assistance when he failed to (a) object to the indictment by filing a motion to quash, (b) object to the indictment on the basis of the unconstitutionality of La. Code Crim. P. art. 413(C) and La. Rev. Stat. Ann. § 15:114 and the procedures under La.

---

[13] St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 02-KO-0049, 1/8/02.

[14]State v. Lewis, 836 So.2d 55 (La. 2003); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2002-KO-0049, 1/31/03.

[15]St. Rec. Vol. 2 of 4, Uniform Application for Post-Conviction Relief, 9/22/03 (signed 9/16/03).

[16]In Dilosa, the Louisiana Supreme Court determined that La. Code Crim. P. art. 413(C) and La. Rev. Stat. Ann. § 15:114, regarding selection process for grand jury panels and forepersons in Orleans Parish, was unconstitutional under the Louisiana Constitution because it was an impermissible local law.

6

Code Crim. P. art. 411,[17] (c) file a bill of particulars, (d) investigate and prepare for trial, (e) call the co-defendant, Collins, to testify at trial as to whether he handed something to Lewis, and (f) cross-examine the State's witnesses with their prior testimony.

On October 27, 2003, the state trial court issued its judgment, later filed on November 6, 2003, denying relief.[18] The court held that Lewis's claims numbers 1, 2, 3, and 4, were without merit. The court also declined to review claim number 5 because no motion to quash had been filed. Finally, the court held that the ineffective assistance of counsel claims numbers 6 and 7 failed to meet the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984).

Lewis filed a writ application with the Louisiana Fourth Circuit on December 2, 2003, seeking review of the trial court's ruling.[19] The court denied relief, on January 8, 2004, finding no error in the trial court's ruling and citing the following Louisiana procedural rules and opinions, without further explanation, in support of its decision:[20] La. Code Crim. P. art. 930.3, art. 930.4, art. 462, art. 464 and art. 532(A)(2); State ex rel. Melinie v. State, 665 So.2d 1172 (La. 1996); State v. Dilosa, 848 So.2d 546 (La. 2003),

---

[17]La. Code Crim. P. art. 411 concerns the drawing of names for the grand jury venire.

[18]St. Rec. Vol. 2 of 4, Trial Court Judgment, signed 10/27/03, filed 11/6/03; St. Rec. Vol. 1 of 4, Minute Entry, 11/5/03.

[19]St. Rec. Vol. 4 of 4, 4th Cir. Writ Application, 2003-K-2108, 12/2/03.

[20]St. Rec. Vol. 4 of 4, 4th Cir. Order, 2003-K-2108, 1/8/04.

in conjunction with Delosh v. Whitley, 684 So.2d 349 (La. 1996); and La. Uniform App. Rule 2-12.4.

On January 29, 2004, Lewis submitted a writ application, which was filed in the Louisiana Supreme Court on February 26, 2004, seeking review of the same seven (7) post-conviction claims presented to the lower courts.[21] The court denied the application without reasons on March 11, 2005.[22]

## II. FEDERAL HABEAS PETITION

Lewis signed the instant federal habeas corpus petition almost four years ago, on August 8, 2005.[23] Lewis mailed the petition to the clerk of this court on August 9, 2005.[24] The form petition and its attachments were received by the clerk of court on August 10, 2005, as indicated by the tendered for filing stamp on the face of the document.[25] That same day, a deputy clerk of court notified Lewis by letter that his

---

[21]St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 04-KH-491, 2/26/04 (postmarked 1/30/04 - see attached envelope, signed 1/29/04); St. Rec. Vol. 2 of 4, La. S. Ct. Letter, 2004-KH-491, 2/26/04.

[22]State ex rel. Lewis v. State, 896 So.2d 52 (La. 2005); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2004-KH-0491, 3/11/05.

[23]Rec. Doc. 1, p. 6.

[24]The mailing date is evidenced by a postal service metered date on the envelope containing Williams's habeas petition. A copy of the envelope is being separately filed in the record.

[25]Rec. Doc. No. 1, p.1.

habeas corpus petition was not proper for filing because he had failed either to pay the $5.00 statutory filing fee or to attach an application for leave to proceed as a pauper.[26]

More than three years later, by letter dated November 6, 2008, Lewis contacted the clerk of court inquiring about the status of his federal habeas corpus petition.[27] In that letter, received by the clerk on November 13, 2008, Lewis <u>acknowledged</u> <u>receipt</u> <u>of the clerk's</u> <u>prior</u> <u>letter</u> but offered no explanation for his failure to pay the filing fee or submit a pauper application as directed more than three years earlier.

On November 17, 2008, a deputy clerk of court sent Lewis another letter, along with a copy of the August 10, 2005, advising him that the petition would be filed upon receipt of the filing fee or submitted to the court upon receipt of a pauper application.[28] The court's records indicate that a check in the amount of $5.00 was received from Lewis on December 3, 2008, at which time his petition was filed.[29]

---

[26]A copy of the clerk of court's August 10, 2005, letter to Lewis has been separately filed into the record.

[27]A copy of Lewis's November 6, 2008, letter to the clerk of court has been separately filed into the record.

[28]A copy of the clerk of court's November 17, 2008 correspondence has been separately filed into the record.

[29]A copy of Lewis's postal money order has been separately filed into the record.

Lewis's petition for federal habeas corpus relief raises eight (8) grounds for relief:[30] (1) The trial court erred in failing to grant a mistrial based on the prosecutor's remarks. (2) Counsel gave ineffective assistance for failure to impeach the State's witness. (3) The evidence was insufficient to support the conviction for distribution of heroin. (4) The life sentence was excessive and amounted to cruel and unusual punishment. (5) The indictment was legally insufficient to state the charges against him. (6) The grand jury was unconstitutionally empaneled. (7) Counsel gave ineffective assistance by not allowing Lewis to testify on his own behalf. (8) Counsel gave ineffective assistance when he failed to (a) file a motion to quash the defective indictment, (b) file a motion to quash the unconstitutional indictment in accordance with State v. Dilosa, (c) file a bill of particulars, (d) investigate and prepare for trial, (e) call the co-defendant, Collins, to testify at trial, (f) cross-examine the State's witnesses with their prior testimony, and (g) counsel's cumulative errors were prejudicial.

The State filed a response in opposition to Lewis's petition, arguing that the petition should be dismissed as untimely filed.[31]

---

[30]Rec. Doc. No. 1.

[31]Rec. Doc. No. 8.

III.  GENERAL STANDARDS OF REVIEW

The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[32] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Lewis's petition, which, for reasons discussed below, is deemed filed in this federal court on August 8, 2005.[33]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and

---

[32] The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[33] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Lewis's petition was filed by the clerk of court on December 3, 2008, when he paid the filing fee. Lewis dated his signature on the petition on August 8, 2005, and it was received for processing by the clerk of court August 10, 2005. I will consider this to be the earliest date he could have submitted it to prison officials for mailing. The fact that he did not pay the filing fee until December 3, 2008, under current law, does not alter the application of the mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843 (5th Cir. 2002) (mailbox rule applies even if inmate did not pay the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

11

must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State alleges that Lewis's petition is not timely filed. A review of the record supports that conclusion.

IV. STATUTE OF LIMITATIONS

The AEDPA requires a petitioner to bring his Section 2254 petition within one year of the date his conviction became final.[34] Duncan v. Walker, 533 U.S. 167, 179-80 (2001). Lewis's conviction was final on November 30, 2001, when he did not timely seek further review of the Louisiana Fourth Circuit's opinion on direct appeal.

---

[34]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
    A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
    C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

Therefore, under a literal application of the statute, Lewis had until Saturday, November 30, 2002, or the next business day, Monday, December 2, 2002, to file his federal habeas corpus petition, which he did not do. His petition must be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. Pace, 544 U.S. at 418-19; Cousin, 310 F.3d at 848.

Lewis has not asserted any reason that might constitute rare or exceptional circumstances why the one-year period should be considered equitably tolled, and my review of the record reveals none that might fit the restrictive boundaries of "exceptional circumstances" described in recent decisions. See United States v. Wynn, 292 F.3d 226

(5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings.

Flanagan, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. Duncan, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts cited herein have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing. Pace, 544 U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000). The timeliness

consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings. Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); Nara v. Frank, 2001 WL 995164, slip opinion at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).

The one-year AEDPA limitations period began to run in Lewis's case on December 1, 2001, the day after his conviction became final. Because Lewis had no

properly filed state post-conviction or other collateral review pending during the subsequent year, the limitations period ran uninterrupted for 365 days, until December 2, 2002, when it expired.

As discussed above, Lewis submitted a writ application to the Louisiana Supreme Court during that time period. The writ application was signed by him on December 3, 2001, the earliest possible date on which he might have placed it in the mail for submission to the court, and filed January 8, 2002. That submission and filing, however, was untimely under La. S. Ct. R. X§5 because it was signed,[35] postmarked, and filed more than 30 days after the Louisiana Fourth Circuit ruled on Lewis's direct appeal.[36] Butler v. Cain, 533 F.3d at 317. Under federal habeas corpus law, this untimely filing cannot be considered in the tolling calculation. Id., at 319 (La. S. Ct. R. X§5(a) forbids any extension of time); Williams v. Cain, 217 F.3d at 309-11 (same).

I further note that Lewis allowed other pockets of time, at least an additional 376 days, to lapse without having a properly filed state court post-conviction or other collateral review proceeding pending. For example, after issuance of the Louisiana Supreme Court's January 31, 2003, ruling on the untimely writ application discussed above, Lewis allowed another 227 days to run before submitting his application for post-

---

[35] Again, I presume the signature date to be the earliest date on which Lewis could have handed his pleadings to prison officials for mailing in accordance with the mailbox rule.

[36] See footnote 12 above.

17

conviction relief to the state trial court on September 16, 2003. Upon completion of that post-conviction review on March 11, 2005, when the Louisiana Supreme Court ruled on Lewis's writ application, he allowed another 149 days to pass before submitting his deficient federal petition to the clerk of court on August 8, 2005. Thus, in addition to the time lost by the untimely Louisiana Supreme Court writ in 2001 to 2003, Lewis allowed another year to pass without pursuing federal habeas corpus relief. He then permitted three years more to lapse between the time he was notified by this court's clerk that he must either pay the $5 filing fee or submit an application to proceed in forma pauperis.

Lewis has been dilatory in his pursuit of these claims. The record establishes that, after his conviction became final, Lewis allowed more than one year to lapse without any properly filed and pending state court proceeding and without having filed a timely federal petition for habeas corpus relief. Thus, his petition must be dismissed as time-barred.

## RECOMMENDATION

**IT IS RECOMMENDED** that the petition of Kendrick Lewis for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain

18

error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___30th___ day of June, 2009.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE